FRIEDMAN, Circuit Judge.
 

 This is an appeal from a decision of the United States Claims Court that United States Steel Corporation (U.S. Steel) realized taxable income when it repurchased its outstanding bonds for less than their face amount.
 
 United States Steel Corp. v. United States,
 
 11 Cl.Ct. 375 (1986), opinion on reconsideration, 11 Cl.Ct. 541 (1987). We reverse and remand.
 

 I
 

 Upon the organization of U.S. Steel’s predecessor
 
 in 1901,
 
 the company issued $100 par value preferred stock. We assume, as the parties have done throughout this case, that the company received that amount for the preferred shares.
 

 In 1966, U.S. Steel merged with its subsidiary in a tax-free reorganization in which the company issued 4% percent debentures with a face value of $175 in exchange for each share of preferred stock. The market price of the debentures and the preferred stock was each approximately $165.
 

 In 1972, U.S. Steel repurchased $12,500,-000 face amount of the debentures for $8,437,500. This amount reflected a price equivalent to $118.13 for each $175 (face value) debenture. The corporation reported the difference between the face value ($175) and the repurchase price ($118) as income in 1972.
 

 In 1982, U.S. Steel filed a timely claim for a refund of the tax paid on that amount. When the Internal Revenue Service failed to act on the claim within six months, U.S. Steel filed this refund suit in the Claims Court. It asserted that it had not realized any income from the cancellation of the indebtedness reflected in the debentures because the company paid more for them in 1972 ($118.13) than it originally received for the preferred stock in 1901 ($100).
 

 On cross-motions for summary judgment, the Claims Court held that U.S. Steel had realized taxable income when it acquired the debentures in 1972 for less than their face value, but in an amount less than the Service had asserted.
 

 Relying upon
 
 United States v. Kirby Lumber Co.,
 
 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931), the Claims Court held that
 

 the consideration received by USS in the 1966 bonds-for-stock exchange determines the issue price of those bonds. Thus, the value of the preferred shares USS received in exchange for issuing its debentures in 1966 (about $165 per share) is to be considered the issue price
 
 *1234
 
 of those debentures for purposes of computing taxable gain on repurchase of the debentures in 1972 pursuant to the Treasury regulations.
 

 United States Steel Corp.,
 
 11 Cl.Ct. at 385.
 

 The court further held:
 

 However, the amount of taxable gain cannot exceed the difference between the issue price, which in this case is the value of the consideration the company received when it issued its bonds, and the repurchase price of those bonds.... In other words, under the decision herein, the plaintiff should have included in income only the difference between the value of the preferred stock in 1966 (the issue price of the bonds) and the repurchase price of the bonds in 1972.
 

 Id.
 
 (citation omitted). The government has not challenged this ruling.
 

 II
 

 Section 61(a)(12) of the Internal Revenue Code of 1954, 26 U.S.C. § 61(a)(12) (1982), provides:
 

 Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
 

 * * * * * >Jt
 

 (12) Income from discharge of indebtedness^]
 

 The Treasury Regulations in effect when U.S. Steel acquired the debentures in 1972 provided:
 

 If bonds are issued by a corporation and are subsequently repurchased by the corporation at a price which is exceeded by the issue price plus any amount of discount already deducted, or (in the case of bonds issued subsequent to Feb. 28, 1913) minus any amount of premium already returned as income, the amount of such excess is income for the taxable year.
 

 Treas.Reg. § 1.61-12(c)(3) (1972).
 

 The question in this case, which is one of first impression in this court, is whether the “issue price” of the debentures in 1966 was the fair market value at that time of the stock for which the debentures were exchanged ($165), as the government contends and the Claims Court held, or the amount the company received for the preferred stock at its original issuance in 1901 ($100). With respect to bonds issued on or before May 12, 1969, neither the Internal Revenue Code nor the Regulations provided rules for determining the issue price of bonds exchanged for property.
 

 A. The starting point for our analysis is the Supreme Court decision in
 
 United States v. Kirby Lumber,
 
 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931). Apparently that was the first case in which the Court recognized and applied the cancellation-of-indebtedness doctrine to hold that a corporation realized income upon redeeming its bonds for less than face value.
 

 In that case the Court stated that the corporation in July issued bonds “for which it received their par value.”
 
 Id.
 
 at 2, 52 S.Ct. at 4. Later the same year, the corporation purchased some of those bonds in the open market for less than par. The Court held that the difference between the purchase price and the par value of the bonds constituted taxable income to the corporation. The Court applied the predecessor to Treas.Reg. 1.61-12(c)(3), quoted above, which in substance was the same, as “a correct statement of the law.”
 
 Id.
 
 at 3, 52 S.Ct. at 4. The Court stated that as a result of the purchase of its bonds at less than par, the corporation made “a clear gain” because “[a]s a result of its dealings it made available $137,521.30 assets previously offset by the obligation of the bonds now extinct.”
 
 Id.
 

 Kirby Lumber
 
 sheds little light on the question before us regarding the “issue price” of the U.S. Steel debentures. In
 
 Kirby Lumber,
 
 the Court stated that the corporation had received the par value of the bonds upon their issuance, which therefore was their issue price. The question in
 
 Kirby Lumber
 
 was whether, upon the repurchase of the bonds for less than their issue price, the corporation realized taxable income. In contrast, the issue in the present case is whether the issue price of the debentures was the market value of the preferred stock at the time it was ex
 
 *1235
 
 changed for the debentures or the amount the company received when the stock originally was issued.
 

 The Tax Court dealt with this issue in the reviewed decision in
 
 Fashion Park, Inc. v. Commissioner,
 
 21 T.C. 600 (1954). There the company had issued for $5-a-share $50 par preferred stock. In a tax-free reorganization, the company issued $50 face value bonds in an exchange for the preferred stock. Subsequently the company repurchased some of the bonds at a price less than the $50 face value but more than the $5 issue price of the preferred.
 

 The court held that the company had not realized any taxable gain on the repurchase of the debentures. The court stated that
 

 [t]he amount received originally as the basis of the obligation must be considered as $5 for each bond, and although the bonds represented a corporate obligation in their face amount, the retirement of that obligation for a lesser amount by a payment far in excess of the amount received upon the assumption of the liability does not in fact leave the petitioner with an increase in assets over what it had before.
 

 21 T.C. at 605. The court further stated that
 

 “[i]t is not enough to speak only of buying and retiring bonds for less than par; the question is whether there has been a gain under all the circumstances, and this requires consideration of all that has been received or accrued on the one hand and given up on the other....”
 

 Id.
 
 (quoting
 
 Rail Joint Co. v. Commissioner,
 
 22 B.T.A. 1277 (1931), aff'd 61 F.2d 751 (2d Cir.1982)).
 

 Finally, the court pointed out:
 

 This question of whether gain has been realized upon retirement of corporate obligations for less than face value has arisen under various different and sometimes perplexing facts, but the decision in each type of case is predicated upon a determination as to whether there has been in fact an increase in the taxpayer’s assets by reason of the transaction.
 

 21 T.C. at 606.
 

 The government attempts to distinguish
 
 Fashion Park
 
 on the ground that since there it conceded that the issue price of the bonds was the $5 the company received upon issuance of the preferred stock, the Tax Court never had to determine the issue price of the bonds. The government’s concession, however, itself constituted a recognition that the proper basis for determining the issue was the amount the company had received for the preferred stock for which it exchanged the bonds. The rationale of the decision in
 
 Fashion Park
 
 that the company had no gain upon the purchase of the bonds for less than their face value was that the transaction did not increase the company’s assets, and the latter conclusion assumed the correctness of the government’s concession.
 

 The Court of Claims, the decisions of which are binding precedent
 
 (South Corp. v. United States,
 
 690 F.2d 1368 (Fed. Cir.1982)), held that in determining gain on cancellation of indebtedness, the “issue price” of the debentures was the amount the corporation had received on the issuance of preferred stock, in exchange for which it issued the debentures.
 
 St. Louis-S.F. Ry. Co. v. United States,
 
 444 F.2d 1102 (Fed.Cir.1971),
 
 cert. denied,
 
 404 U.S. 1017, 92 S.Ct. 678, 30 L.Ed.2d 665 (1972). There in a 1947 reorganization the company had issued preferred stock. In 1954, it issued debentures for the preferred on the basis of $100 maturity value of debentures for each $100 par value share of preferred. The market value of each share of preferred at the time of exchange was $69.14. Subsequently the company reacquired some of the debentures for an amount less than their maturity value. The Court of Claims held:
 

 The actual issue price, the value of what plaintiff received for the debentures, controls any determination of gain on the cancellation of indebtedness. Treas.Reg. 1.61-12(c);
 
 United States v. Kirby Lumber Co.,
 
 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931);
 
 Fashion Park, Inc.,
 
 21 T.C. 600 (1954).
 

 However, we have already found that the issues [sic] price of the bonds was their maturity value. The value of the
 
 *1236
 
 stock received by the plaintiff was equivalent to the maturity value of the bonds. Therefore, the Service properly computed the gain on the cancellation of indebtedness.
 

 444 F.2d at 1107-08.
 

 In
 
 Commissioner v. Rail Joint Co.,
 
 the Second Circuit affirmed the Tax Court determination that a corporation did not realize taxable gain when it repurchased bonds it originally issued as dividends to common shareholders. The court of appeals noted that “the purchase and retirement of the bonds in the two years in question resulted in decreasing the corporation’s liabilities without a corresponding decrease in its assets, and the petitioner contends that the difference should be deemed income....” 61 F.2d at 752. The court pointed out, however, that the corporation “never received any increment to its assets, either at the time the bonds were delivered or at the time they were retired_ [T]he corporation received no asset which it did not possess prior to the opening and closing of the bond transaction, and it is impossible to see wherein it has realized any taxable income. In such circumstances the Kirby Case cannot be regarded as controlling.”
 
 Id.
 

 The principle these eases establish is that in determining whether a corporation’s cancellation of indebtedness results in taxable income, the critical inquiry is whether the effect of the cancellation is to increase the corporation’s assets.
 

 The “issue price” of the debentures must be ascertained in the light of that standard. Applying that principle, we conclude that the “issue price” of U.S. Steel’s debentures was the amount the company received when it originally issued the preferred stock in 1901 and not the market value of the preferred when the debentures were issued in exchange for the stock in 1966.
 

 Like the exchange of bonds for preferred stock in
 
 Fashion Park,
 
 U.S. Steel’s 1966 exchange of debentures for stock did not increase the company’s assets. The capital the company obtained through the issue of the preferred stock was acquired when the company issued the stock in 1901. As a result of the restructuring of U.S. Steel’s corporate structure following the 1966 issuance of debentures in exchange for the preferred stock, “there has been no new capital acquired and no additional cost incurred in retaining the old capital.”
 
 Commissioner v. National Alfalfa Dehydrating & Milling Co.,
 
 417 U.S. 134, 152, 94 S.Ct. 2129, 2139, 40 L.Ed.2d 717 (1974).
 

 As noted, the governing regulation treats as income the difference between the “issue price” of the debentures and their repurchase price. The purpose of that calculation is to determine whether the corporation received income from discharge of indebtedness. Since the exchange by U.S. Steel of its debentures for preferred stock did not increase the company’s assets, the issue price of the debentures was the capital the company received for the preferred stock for which the debentures were exchanged.
 

 The fact that the substitution of preferred stock for debentures reduced U.S. Steel’s liability by the amount of the retired debentures did not increase the company’s assets or result in income to the company.
 
 See Fashion Park,
 
 21 T.C. at 605;
 
 Commissioner v. Rail Joint Co.,
 
 61 F.2d at 752 (“it is not universally true that by discharging a liability for less than its face the debtor necessarily receives a taxable gain”).
 

 Indeed, it is the elimination of U.S. Steel’s liability on the redeemed debentures that the government primarily relies upon to support its claim that the company realized income upon the purchase of the debentures for less than their face amount. The government points to the statement in
 
 Kirby Lumber
 
 that “[a]s a result of its dealings it made available $137,521.30 assets previously offset by the obligation of the bonds now expired.” 284 U.S. at 3, 52 S.Ct. at 4. That statement, however, cannot properly be read as announcing a general rule that any reduction of debt liability through an exchange of stock for debentures necessarily and automatically constitutes income to the extent of the reduction, and should not be extended to cover the
 
 *1237
 
 significantly different situation involved in the present case.
 

 The government argues that “at no point has the taxpayer adequately explained why it would issue an obligation worth $165 to receive consideration that it claims is only equal to approximately $100.” The obvious answer is that the interest on the debentures was deductible but the dividends on the preferred stock were not. Apparently U.S. Steel made the business judgment that it was better off financially to be able to deduct the interest on the debentures despite the fact that the face amount of the debentures exceeded the par value of the preferred stock.
 

 B. The government points out that the issue price of debentures also is involved in deciding the question of original issue debt discount where debt is issued in exchange for stock, the market value of which is less than the face value of the debt. When bonds are issued at less than their face value, the result is a discount (deduction) representing the increased interest cost to the issuing corporation, which may be amortized and deducted over the life of the bonds. The government relies on cases holding that in that situation the issue price of the debentures is the market value at the time of the exchange of the stock for which the debentures were exchanged.
 

 The leading case dealing with bond discount arising upon the issuance of bonds in exchange for preferred stock is
 
 Commissioner v. National Alfalfa Dehydrating & Milling Co., 417
 
 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974). There the company (NAD) had issued $50 par preferred stock. In a reorganization the company issued debentures in exchange for the preferred. One $50 debenture was exchanged for each outstanding share of preferred. In the over-the-counter market, which was “thin,” the stock price was approximately $33 per share at the time of the exchange. The corporation claimed a bond discount (deduction) for the difference between the face value of the debenture ($50) and the market value of the preferred stock ($33). The Court held that no discount was allowed.
 

 The Court stated the issue as “whether debt discount arises where a corporate taxpayer issues an obligation in exchange for its own outstanding preferred shares.” 417 U.S. at 147, 94 S.Ct at 2136. The Court ruled that the “relevant inquiry in each case must be whether the issuer-taxpayer has incurred, as a result of the transaction, some cost or expense of acquiring the use of capital.”
 
 Id.
 

 The Court pointed out:
 

 It has not been demonstrated that NAD, by the exchange, incurred any additional cost for the use of capital. NAD merely replaced that portion of its paid-in capital represented by its preferred with paid-in capital represented by its debentures. From the perspective of the corporation, the transaction was the exchange of one form of interest or participation in the corporation for another. But the corporate assets were neither increased nor diminished....
 

 ... But again, when viewed from the corporation’s perspective, and regardless of the income tax effect upon the former preferred shareholder, which we deem to be irrelevant, there has been no new capital acquired and no additional cost incurred in retaining the old capital....
 

 ... Upon the exchange, the corporation canceled the preferred, and thus eliminated the preferred stock account upon its books, together with the preferred’s attendant obligations. The market value of the preferred at that moment bore no direct relationship to the amount of funds on hand. The capital “freed” by the cancellation of the preferred was merely transferred to the liability account for the debentures. No new capital was involved.
 

 417 U.S. at 151-53, 94 S.Ct. at 2138-39 (citations and footnotes omitted).
 

 The focus of the inquiry is different in bond discount and cancellation-of-indebtedness cases. In the former, it is on the cost of capital borrowed by the corporation— whether there was bond discount because the issuer received less than the face amount of the debt. The answer to that question necessarily depends upon the val
 
 *1238
 
 ue to the issuer of the preferred stock it acquired in exchange for the debt, since if the preferred stock is worth less than the debt, the difference represents an additional cost of borrowing, which is treated as interest. In cancellation-of-indebtedness cases, however, the focus is on whether the corporation increased its capital as a result of eliminating its indebtedness. Accordingly, the bond discount cases are not necessarily applicable to cancellation of indebtedness cases.
 

 The decision in
 
 National Alfalfa
 
 nevertheless is helpful in determining whether U.S. Steel increased its assets in replacing its preferred stock with its debentures. In holding that National Alfalfa had not “incurred any additional cost for the use of capital” by exchanging its debentures for preferred stock, the Court pointed out that in the exchange “the corporate assets were neither increased nor diminished,” and that “[n]o new capital was involved.” 417 U.S. at 151-53, 94 S.Ct. at 2138-39. As we have explained in Part IIA, that is precisely the situation that existed in connection with U.S. Steel’s issuance of its debentures in exchange for its preferred stock. There is no reason to believe that in this respect the Supreme Court would view the situation in the present case any differently from that in
 
 National Alfalfa.
 

 The government attempts to distinguish
 
 National Alfalfa
 
 on the ground that because there the market for the preferred stock was “thin,” it would have been highly speculative, as the Court recognized, to attempt to determine the market price of the number of shares of preferred stock that were acquired. The Court relied on the thinness of the market for the preferred stock, however, as a reason for rejecting the company’s contention that the “economic realities” of the transaction were the same as if the company had actually sold its $50 debentures for $33 in cash and then used that cash to purchase the preferred at $33 a share. 417 U.S. at 148, 94 S.Ct. at 2136. The portion of
 
 National Alfalfa
 
 upon which we have relied, holding that the company did not acquire any additional capital through the exchange, was not dependent upon the discussion of the market thinness point, but constituted a separate portion of the opinion.
 

 CONCLUSION
 

 The portion of the judgment of the United States Claims Court that denied U.S. Steel refund of the taxes it paid on the difference between the repurchase price of its debentures and their fair market value at the time of repurchase is reversed, and the case is remanded to the Claims Court to enter judgment in favor of U.S. Steel for the amount of that tax together with interest as allowed by law.
 

 REVERSED AND REMANDED.